UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: SOUTHWEST HEALTH SERVICES, P.A.,            No. 24-10898-j7

Debtor.

## MEMORANDUM OPINION AND ORDER GRANTING ASHLEY IMMING'S MOTION FOR SANCTIONS

Ashley Imming requests the Court to enter sanctions against Dr. Osvaldo De La Vega, the sole shareholder of Debtor Southwest Health Services, P.A. ("SWHS") and against SWHS, jointly and severally, based on her allegation that SWHS filed its voluntary petition under chapter 7 of the Bankruptcy Court for an improper purpose. *See* Creditor Ashley Imming's Motion for Sanctions ("Motion for Sanctions" – Doc. 24).[1] Ms. Imming also requests the Court to order Dr. De La Vega to pay a sanction to the Court. Ms. Imming contends that SWHS filed this bankruptcy case only to delay ongoing litigation that Ms. Imming filed against Dr. De La Vega and his various holding companies, including SWHS, in both state and federal courts, and that the bankruptcy filing, in which SWHS scheduled less than $400 in total assets and identified Ms. Imming as its only creditor, served no legitimate bankruptcy purpose, was filed in bad faith, and caused Ms. Imming to incur unnecessary attorney's fees and costs.

The Court held a final hearing on the Motion for Sanctions on May 5, 2025. Counsel for Dr. De La Vega appeared, but Dr. De La Vega did not appear. Debtor's and Dr. De La Vega's joint Exhibits A, B, C, and E, and Ms. Imming's Exhibits 1-4 and 6–14 were admitted by stipulation.[2] The parties did not present any testimonial evidence.

---

[1] SWHS and Dr. De La Vega each filed a response to the Motion for Sanctions. (Doc. 40 and Doc. 45).
[2] Dr. De La Vega did not offer into evidence an Exhibit D.

1

SWHS objected to the admission of Ms. Imming's Exhibit 5 on relevance grounds. Exhibit 5 is a copy of an Order Granting, In Part, Motion to Compel and for Sanctions and Motion for Injunctive Relief and Establishing Procedure for the Issuance of a Writ of Replevin Directing the Dona Ana County Sheriff to Seize Vehicles ("State Court Order") entered December 6, 2024, in a state court action filed by Ms. Imming against Dr. De La Vega. As an alternative to the admission of Exhibit 5, Ms. Imming requested the Court to take judicial notice State Court Order. Because the State Court Order was entered on December 6, 2024, after this bankruptcy case was closed on November 13, 2024, the Court agrees that Exhibit 5 is not relevant to whether SWHS filed this bankruptcy case in bad faith, for an improper purpose, or without a legitimate bankruptcy purpose. The Court therefore sustains the objection and does not admit Exhibit 5. However, the Court will grant Ms. Imming's request to take judicial notice of the fact that the State Court Order was filed; by taking judicial notice, the Court is not accepting the fact findings contained in the State Court Order as true. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) (taking judicial notice of a document does not "prove the truth of the matters asserted therein." (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002))).

For the reasons explained below, the Court will grant the Motion for Sanctions and direct Ms. Imming's counsel to file of record a copy of its billing invoices documenting the fees and costs incurred by Ms. Imming in connection with this bankruptcy case.

2

Case 24-10898-j7    Doc 53    Filed 07/14/25    Entered 07/14/25 15:50:21 Page 2 of 13

FACTS AND PROCEDURAL HISTORY[3]

In 2020, Ms. Imming obtained a judgment against Dr. De La Vega and SWHS (the "Judgment") in the Third Judicial District Court, County of Dona Ana, State of New Mexico in Case No. D-307-CV-2017-00389, styled *Ashley Imming f/k/a Ashley Corbus v. Osvaldo De La Vega and Southwest Health Services, P.A.* (the "State Court Action").[4] The Judgment entered in the State Court Action awarded Ms. Imming a total of $867,971.07 against both SWHS and Dr. De La Vega.[5] SWHS filed a response to a post-judgment discovery request in the State Court Action indicating that SWHS did not have any bank accounts since February 13, 2020.[6]

SWHS filed a voluntary petition under chapter 7 of the Bankruptcy Code on August 29, 2024.[7] Dr. De La Vega signed the petition as President of SWHS.[8] Dr. De La Vega is the sole shareholder of SWHS.[9] The only asset listed on Schedule A/B filed in SWHS's bankruptcy case is "office furniture and parts for equipment," with a scheduled value based on "owner opinion" of $400.00.[10] The only creditor scheduled in SWHS's bankruptcy schedules is Ms. Imming.[11] SWHS's Schedule E/F: Creditors Who Have Unsecured Claims lists the Judgment entered in favor of Ms. Imming in the State Court Action in the amount of $867,971.07, and identifies the claim as "Disputed."[12] Dr. De La Vega is scheduled as a Co-Debtor on Schedule H based on the

---

[3] The Court takes judicial notice of the documents filed of record in this bankruptcy case. *See Tal v. Hogan*, 453 F.3d at 1265 n. 24 (the court is allowed to take judicial notice of its own files and records); *In re Campbell*, 500 B.R. 56, 59 n.7 (Bankr. D.N.M. 20113) ("A bankruptcy court has the inherent authority to take judicial notice of or otherwise consider entries on its own docket.").
[4] *See* Exhibit 1.
[5] *Id.*
[6] *See* Exhibit 14.
[7] *See* Exhibit 11.
[8] *Id.* at p. 4.
[9] *Id.* at p. 5.
[10] *Id.* at p. 10.
[11] Exhibit 11.
[12] *Id.* at p. 17.

3

debt he and SWHS owe to Ms. Imming.[13] SWHS's Statement of Financial Affairs lists the State Court Action, and two other actions filed by Ms. Imming against SWHS: 1) an action filed in the United States District Court for the District of New Mexico as Case No. 2:23-cv-00378-GJF-DLM (the "USDC Action"); and 2) an action for "domestication of judgment/trespass to try title" filed in the 41st District Court of El Paso, Texas, as Case No. 2023DCV2757 (the "Texas Action").[14] SWHS's Statement of Financial Affairs ("SOFA") characterizes the USDC Action as a collections action.[15] The SOFA reports that SWHS earned $0.00 income from operating a business from January 1, 2022, through the date of filing of the bankruptcy case.[16]

Ms. Imming initiated the USDC Action on May 3, 2023.[17] In the Second Amended Complaint filed in the USDC Action, Ms. Imming alleged, among other things, that Dr. De La Vega sold SWHS for $1.2 million, and used the proceeds from the sale to create another company called Mesilla Capital Investments De Mexico ("MCI"), and wrongfully transferred money from SWHS to MCI.[18] SWHS and Dr. De La Vega filed an answer to the Second Amended Complaint in the USDC Action on August 2, 2024.[19] SWHS responded to Ms. Imming's discovery requests in the USDC Action in July of 2024, stating, among other things, that SWHS was sold in 2018, that the proceeds from the sale of SWHS's assets were held by Dr. De La Vega and fully disbursed by December 2018, such that the account balance as of February 13, 2020, was $243.46, and that Dr. De La Vega has no knowledge of any net worth value of

---

[13] *Id.* at p. 20.
[14] *Id.* at pp. 25-26.
[15] *Id.* at p. 25.
[16] *Id.* at p. 23.
[17] *See* Exhibit B.
[18] *See* Exhibit 2.
[19] *See* Exhibit 3.

4

SWHS.[20] On August 29, 2024, Dr. De La Vega, SWHS, and MCI filed a Notice of Non-Appearance for Deposition Set August 30, 2024, in the USDC Action due to SWHS filing bankruptcy on August 29, 2024.[21]

Ms. Imming initiated the Texas Action on August 23, 2023, by domesticating the Judgment.[22] Ms. Imming filed a motion for summary judgment in the Texas Action on August 5, 2024.[23] A trial in the Texas Action was set for September 20, 2024.[24]

One day after the filing of SWHS's bankruptcy case, Ms. Imming filed a motion seeking to confirm that the automatic stay under § 362 did not stay the trial in the Texas Action because the Texas Action did not involve SWHS or its assets.[25] In response to the Motion, SWHS stated that the Texas Action "is part of an ongoing effort to satisfy a judgment against [SWHS]" such that the stay should apply to stop the litigation.[26] The Court determined that the automatic stay did not apply to the Texas Action because the Texas Action seeks to collect the Judgment from real property that SWHS claims no interest in, and that Ms. Imming did not seek any relief in the Texas Action against SWHS or any bankruptcy estate assets.[27] The Court also determined that SWHS lacked standing to object to Ms. Imming's motion to determine that the stay does not apply because it has no personal stake in the outcome of the Texas Action.[28] The Texas Action was dismissed on September 23, 2024.[29]

---

[20] *See* Exhibit 4 (Response to Interrogatory No. 20) and Exhibit 13 (Response to Interrogatory Nos. 4 and 5).
[21] *See* Exhibit 9.
[22] *See* Exhibit C.
[23] *See* Exhibit 6.
[24] *See* Creditor Ashley Imming's Emergency Motion ("Stay Motion" – Doc. 3).
[25] *Id.*
[26] *See* Debtor's Objection to Ashley Imming's Emergency Motion (Doc. 15)
[27] *See* Order Determining that the Automatic Stay Does Not Apply (Doc. 18).
[28] *Id.*
[29] *See* Exhibit C.

5

The Chapter 7 Trustee concluded the meeting of creditors in this bankruptcy case on October 25, 2024, and filed a report of no distribution.[30] The Court entered a Final Decree on November 13, 2024.[31] SWHS's bankruptcy case was closed on the same day.[32]

Ms. Imming filed the Motion for Sanctions on November 15, 2024.[33] Because the Motion for Sanctions was filed when the bankruptcy case was closed, Ms. Imming had to file a motion to reopen the bankruptcy case and pay the $260.00 filing fee.[34]

In responding to the Motion for Sanctions, SWHS stated that it hoped that by filing a chapter 7 bankruptcy case, Ms. Imming would realize that SWHS had no assets and would therefore cease her efforts to conduct discovery against SWHS.[35] No testimony in support of this position was offered at the final hearing on the Motion for Sanctions.

DISCUSSION

Ms. Imming requests the Court to impose sanctions on SWHS and its principal, Dr. De La Vega, pursuant to 11 U.S.C. § 105.[36] For the reasons explained below, the Court concludes that sanctions against both SWHS and its principal, Dr. De La Vega, pursuant to the Court's inherent authority under § 105(a) are warranted based on SWHS's improper filing of this chapter 7 bankruptcy case with no legitimate bankruptcy purpose. The Court will therefore award Ms. Imming the reasonable attorneys' fees and costs she incurred in connection with this bankruptcy case as an appropriate sanction against SWHS and Dr. De La Vega.

---

[30] *See* Doc. 21.
[31] *See* Doc. 23.
[32] *See* docket entry on November 13, 2024.
[33] *See* Doc. 24.
[34] *See* Doc. 26 and docket entry on November 21, 2024.
[35] *See* Exhibit 12
[36] References to "§," "§§," or "Section" are to title 11 of the United States Code, U.S.C.

6

Section 105(a) grants the bankruptcy court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 105 authorizes the Court to take "any action . . . necessary or appropriate . . . to prevent an abuse of process." *Id.* The Court's inherent authority under § 105(a) includes the power to sanction. *See In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1089 (10th Cir. 1994) (stating that the bankruptcy court has the inherent authority under § 105 "to maintain order and confine improper behavior in its own proceedings" and could impose sanctions in connection with the dismissal of a bankruptcy case that the court determined was filed in bad faith); *Harmon Family Trust v. Thomas (In re Thomas)*, 397 B.R. 545 (10th Cir. BAP 2008) (unpublished) ("[A] court may sua sponte impose sanctions for conduct abusive of the judicial system under its inherent authority under 11 U.S.C. § 105(a)." (citing *Courtesy Inns*, 40 F.3d at 1089)), *aff'd*, 348 F. App'x 413 (10th Cir. 2009); *In re Dental Profile, Inc.*, 446 B.R. 885, 906 (Bankr. N.D. Ill. 2011) ("Section 105(a) confers both statutory and inherent authority upon bankruptcy courts to impose sanctions.").[37] A finding that a debtor filed a bankruptcy case in bad faith, was filed for an improper purpose, or was filed with no legitimate bankruptcy purpose, can support an award of sanctions under § 105(a) against both the debtor and its principal. *Courtesy Inns*, 40 F.3d at 1090 (holding that the court had authority to impose sanctions against the debtor-company's president when the bankruptcy court found that the bankruptcy filing was "'purely for the purpose of delaying the creditor from enforcing its rights.'" (quoting bankruptcy court's findings); *In re Ngoan T.G. Holdings, LLC*, No. 14-16477-MKN, 2016 WL 1592224, at *3 (Bankr. D. Nev. Feb. 9, 2015) (imposing monetary sanctions

---

[37] *See also In re Timberon Water & Sanitation Dist.*, No. 9-07-12142-ML, 2009 WL 2922829, at *2 (Bankr. D.N.M. June 12, 2009) (acknowledging that bankruptcy courts have relied on § 105(a) to sanction bad faith conduct); *In re U.S. Voting Mach., Inc.*, 224 B.R. 165, 169 (Bankr. D. Colo. 1998) ("Courts still retain the inherent power to impose monetary sanctions for conduct determined by the court to be abusive, unwarranted or in bad faith.").

against debtor's principal under § 105 based on the court's finding that the commencement of the bankruptcy case had no legitimate bankruptcy purpose).

An appropriate sanction the Court may impose under § 105(a) may consist of an award of attorney's fees and costs incurred the creditor in connection with a bankruptcy case that the Court finds was filed in bad faith or without a legitimate purpose. *See Courtesy Inns*, 40 F.3d at 1090 (affirming award of attorneys' fees as a sanction based § 105(a)); *In re Delaware Valley Lift Truck Inc.*, 640 B.R. 342, 370 (Bankr. E.D. Pa. 2022) ("[U]nder Section 105(a), courts may impose remedial sanctions aimed at compensating an aggrieved party for damage caused by the misconduct, including reimbursement of legal fees and expenses incurred."); *Cf. In re Nursery Land Dev., Inc.*, 91 F.3d 1414, 1416 (10th Cir. 1996) (though not expressly premised on § 105, the bankruptcy court appropriately imposed sanctions consisting of creditor's attorney fees and expenses against the debtor's sole officer and debtor's attorney based on its finding that the debtor filed the chapter 11 petition in bad faith).

However, the Court may not award attorneys' fees and costs under its inherent authority under § 105(a) absent a finding of sanctionable conduct. *See In re John Richard Homes Bldg. Co.,* 523 B.R. 83, 87 (Bankr. E.D. Mich. 2014) ("Section 105(a) does not authorize an award of attorney fees in the absence of an underlying sanctionable conduct."), *aff'd sub nom. John Richards Homes Bldg. Co. v. Adell,* No. 2:15-CV-10007, 2015 WL 5121359 (E.D. Mich. Aug. 31, 2015); *Hagemann v. Durkin (In re Durkin)*, No. 23-10665-T7, 2024 WL 315354, at *5 (Bankr. D.N.M. Jan. 26, 2024) ("Section 105 does not give the Court the unfettered right to award attorney fees."). Ultimately, "[a] court may use its statutory sanctioning authority under section 105(a) if the court finds that the judicial process has been abused." *Dental Profile,* 445 B.R. at 906. *See also In re Scrivner*, 535 F.3d 1258, 1268 (10th Cir. 2008) (Section 105(a)

"grants bankruptcy courts the power to 'sanction conduct abusive of the judicial process.'" (quoting *Courtesy Inns,* 40 F.3d at 1089)).

The circumstances surrounding this bankruptcy case support a finding that this case was filed without a legitimate bankruptcy purpose and, therefore, was an abuse of the judicial process. SWHS filed its voluntary petition under chapter 7. A business entity such as SWHS may file a chapter 7 petition, but is not entitled to receive a discharge. *See* § 727(a)(1) ("The court shall grant the debtor a discharge unless . . . the debtor is not an individual."). Nor is a corporation like SWHS, which reported no income for the two years prior to the bankruptcy filing, in need of a fresh start. A business entity may wish to file a chapter 7 bankruptcy case so a chapter 7 trustee will liquidate its assets to pay creditors. But here, the only asset listed in SWHS's schedules is office equipment valued at $400. The only creditor listed in SWHS's schedules is Ms. Imming. SWHS scheduled her claim as a disputed claim based on the Judgment in the amount of $867,971.07.[38] Even if the chapter 7 trustee liquidated SWHS's few assets, there would be no meaningful distribution to SWHS's only creditor. In fact, the chapter 7 trustee filed a report of no distribution, indicating his intent to abandon all scheduled estate assets.[39] The bankruptcy case is hopelessly insolvent. SWHS's bankruptcy case was closed approximately two and a half months after it was filed.

In addition, SWHS resisted Ms. Imming's Stay Motion[40] even though the Stay Motion only sought to continue the Texas Action against a non-debtor, Dr. De La Vega.[41] The Court ultimately found that SWHS lacked standing to object to the Stay Motion.[42]

---

[38] Exhibit 11, p. 17.
[39] *See* Doc. 21.
[40] Doc. 15.
[41] Stay Motion.
[42] Doc. 18.

9

At the final hearing on the Motion for Sanctions, counsel for SWHS argued that SWHS filed this chapter 7 bankruptcy case to place Ms. Imming on notice that it has no assets from which to collect the Judgment. The Court finds this justification hollow. Prior to the bankruptcy filing, SWHS and Dr. De La Vega had already responded to Ms. Imming's discovery requests in the USDC Action stating that SWHS was sold in 2018 and that the proceeds from the sale of its assets that were deposited into Dr. De La Vega's bank account totaled $243.46 as of 2020.[43] Further, other than counsel's explanation, no evidence or testimony was presented to the Court at the final hearing on the Motion for Sanctions regarding the reasons SWHS needed bankruptcy relief. Its principal, Dr. De La Vega, did not even attend the hearing. Overall, it appears that SWHS filed this bankruptcy case in an effort to frustrate, or at least forestall, Ms. Imming's efforts to collect on the Judgment. It was filed on the eve of a trial scheduled in the Texas Action, which caused Ms. Imming to file the Stay Motion. "When the filing of a bankruptcy petition is motivated [solely] by a desire to delay a creditor from enforcing its rights in an ongoing dispute, the filing is an abuse of process." *Dental Profile*, 446 B.R. at 906. *See also Courtesy Inns*, 40 F.3d at 1090 (concluding that "the inherent power of the bankruptcy court is surely broad enough to sanction [debtor's principal] personally when it ultimately found the bankruptcy filing was 'purely for the purpose of delaying the creditor from enforcing its rights.'" (quoting bankruptcy court's findings). Sanctions are therefore appropriate.

Ms. Imming incurred attorneys' fees and costs, including the fee to reopen this bankruptcy case to pursue her Motion for Sanctions, that she would not have incurred had SWHS not filed this chapter 7 bankruptcy case without a legitimate bankruptcy purpose. Dr. De La Vega SWHS's representative and its sole shareholder caused SWHS to file this chapter 7 bankruptcy

---

[43] *See* Exhibit 3.

case solely to delay Ms. Imming's collection efforts. Such filing, which served no legitimate bankruptcy purpose, was an abuse of the bankruptcy process. The Court will, therefore, exercise its inherent authority under § 105(a) to award Ms. Imming the reasonable attorneys' fees and costs she incurred in connection with this bankruptcy case against both SWHS and Dr. De La Vega.

*Ms. Imming's Request for a Monetary Sanction Payable to the Court*

The Motion for Sanctions includes a request to award sanctions against SWHS and Dr. De La Vega payable to the Court to punish them for wasting judicial resources in administering this bankruptcy case that had no legitimate bankruptcy purpose. The Court declines to do so.

Under Fed. R. Bankr. P. 9011(c)(2), a court may impose a monetary sanction as a penalty payable to the bankruptcy court. Fed. R. Bankr. P. 9011(c)(2) ("[T]he sanction may consist of . . . an order to pay a penalty into the court . . . ."). However, Ms. Imming's request for sanctions was made pursuant to the Court's inherent authority under § 105, not Fed. R. Bankr. P. 9011. The Court has not issued an order to show cause why sanctions should not be imposed against SWHS or Dr. De La Vega under Fed. R. Bankr. P. 9011. *See In re Crofford*, 301 B.R. 880, 885 (8th Cir. BAP 2003) (concluding that where the court initiates an award of sanctions under Rule 9011 by issuing an order to show cause, "monetary sanctions are limited to the award of a penalty payable to the court." (citing Fed. R. Bankr. P. 9011(c)(2)). Because a sanctions award pursuant to Fed. R. Bankr. P. 9011 is not at issue, the Court declines to impose a monetary penalty against either SWHS or Dr. De La Vega payable to the Court.

CONCLUSION

Based on the foregoing, the Court concludes that sanctions against SWHS and its sole shareholder and president, Dr. De La Vega, are warranted because SWHS filed this chapter 7

11

bankruptcy case with no legitimate bankruptcy purpose and solely to delay Ms. Imming's collection efforts. Pursuant to the Court's inherent authority under § 105(a), the Court will award Ms. Imming her reasonable fees and costs incurred in connection with this bankruptcy case as a sanction against SWHS and Dr. De La Vega, jointly and severally.

WHEREFORE, IT IS ORDERED, that the Motion for Sanctions is GRANTED to the extent it seeks sanctions against SWHS and Dr. De La Vega under § 105(a) based on the filing of SWHS's chapter 7 bankruptcy case with no legitimate bankruptcy purpose.

ORDERED FURTHER, that the request to impose sanctions against SWHS and Dr. De La Vega payable to the Court is denied.

ORDERED FURTHER, that by July 25, 2025, counsel for Ms. Imming shall file of record a copy of the attorney's fees invoices relating to the work he performed for Ms. Imming in connection with this bankruptcy case (the "Attorney's Fees and Costs").

ORDERED FURTHER, that the deadline for SWHS and/or Dr. De La Vega to object to the reasonableness of Ms. Imming's fees is 10 days from the date of filing of the Attorney's Fees and Costs. If an objection is timely filed, the Court will set a final hearing to determine the reasonable amount of the Attorney's Fees and Costs.

ORDERED FURTHER, that if no objection is timely filed, the Court will enter a judgment in favor of Ms. Imming and against SWHS and Dr. De La Vega, jointly and severally, awarding the Attorney's Fees and Costs to Ms. Imming, as a sanction, and directing that the sanction amount be paid to Ms. Imming within 10 days of the date of entry of the judgment.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: July 14, 2025

COPY TO:

James Kerby Jopling
Attorney for SWHS
Jim K. Jopling, Attorney at Law
521 Texas Ave
El Paso, TX 79901

Michael K Daniels
Attorney for Dr. Osvaldo De La Vega
Michael K. Daniels
1400 Guaymas Pl NE
Albuquerque, NM 87110

Paul Hibner
Ben Furth
Attorney for Ashley Imming
The Furth Law Firm, PA
780 South Walnut, Building No. 5
Las Cruces, NM 88001